# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BENSALEM PARK MAINTENANCE, LTD., | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : No. 11-2233 |
| METROPOLITAN REGIONAL COUNCIL OF CARPENTERS, | : |
| Defendant. | : |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**  JULY 5, 2011

Presently before the Court is a Motion to Dismiss submitted by Defendant, Metropolitan Regional Council of Carpenters (the "Union"). In the Motion, the Union seeks to dismiss Plaintiff, Bensalem Park Maintenance, Ltd.'s (the "Company") Complaint. Also before the Court is a Motion for Reconsideration submitted by the Union asking this Court to rescind our Order of May 6, 2011, which stayed enforcement of the arbitration award and a Motion for Default Judgment submitted by the Union. For the following reasons, the Union's Motion to Dismiss will be granted, the Union's Motion for Reconsideration will be denied as moot, and the Company's Motion for Default Judgment will be denied.

## I. FACTS

The Company is a Pennsylvania corporation that has two separate and distinct contracts at the Parx Casino and Racetrack located in Bensalem, Pennsylvania. (Compl. ¶ 8.) The first is with Bensalem Racing Association, Inc. and Keystone Turf Club, Inc., which are entities licensed by the Pennsylvania State Horse Racing Commission to conduct thoroughbred horse racing. (Id.)

Pursuant to this contract, the Company provides personnel and management for racetrack operations for facilities, valet, cleaning, maintenance, and certain trade positions. (Id.) The second contract is with Greenwood Gaming and Entertainment, Inc., an entity licensed by the Pennsylvania Gaming Control Board to conduct gaming. (Id.) Pursuant to this contract, the Company provides personnel and management for slot operations, valet, cleaning, maintenance, and certain trade positions. (Id.) The Union was recognized by the Company as the collective bargaining representative for a bargaining unit of all employees in the classifications of journeyman, apprentices, or foremen who performed any work within the jurisdiction of the Union. (Id.)

The relationship between the Company and the Union is defined by two agreements- a 2006 Memorandum of Understanding ("2006 MOU") signed in November 2006 and effective until April 30, 2010 and a 2010 Memorandum of Understanding ("2010 MOU"), signed on April 29, 2010 and effective until April 30, 2011. (Id. at ¶ 17.) Those agreements, in turn, incorporate some provisions from the General Building Contractors Association, Incorporated Agreement ("GBCA") and the Interior Finishers Contractors Association ("IFCA") agreement. (Id.) Article 14 of the GCBA sets forth a comprehensive three-step dispute resolution process "to be followed with respect to all disputes of any nature whatsoever which may arise between the parties hereto or their individual members." (Compl. Ex. A, Art. 14, p. 20.) Article 14 specifically states:

(i) If the dispute affects or arises on a particular job or operation, an attempt shall be made to settle it by discussion between the Foreman and/or the Superintendent on the job or operation, on the one hand, and the Steward on the job or operation and/or the Council's Business Representative for the area in which the job or operation is located, on the other hand.

(ii) If the discussion provided for in paragraph (i) above is not held, or it does

> > not result in a prompt settlement of the dispute, an attempt shall be made to settle the dispute by discussion between the Contractor and/or the Superintendent on the job or operation, on the one hand, and the Council's Executive Secretary-Treasurer and/or the Business Representative aforesaid on the other hand.
>
> (iii) If the discussion provided for in paragraph (ii) above does not result in a prompt settlement of the dispute, or the dispute affects or involves more than one job or operation, an attempt shall be made to settle the dispute by discussion between the Executive Secretary Treasurer of the Council, on the one hand, and the Executive Director of the Association, or his designee, on the other hand. If such discussion does not result in a prompt settlement of this dispute and either the Council or the Contractor involved in the dispute desires further action in the dispute, the Council or the Contractor involved in the dispute as the case may be, shall have the right to decide whether such further action shall be taken, and such further action, also, shall be to refer the matter to arbitration in the manner hereinafter provided.

(Id. at pp. 20-24.) Regarding financial remedies available to the party who prevails at arbitration, the GCBA provides:

> . . . should the Arbitrator direct a financial remedy, such remedy shall commence to run from the date the arbitration is filed and shall bear an interest rate from that date to the date of payment equal to six percent per year, compounded monthly from the date the Arbitration is filed to the date that payment is made.

(Id. at 23.)

On June 1, 2009, the Union filed a grievance alleging that the Company "assigned work duties to non-bargaining unit members, despite the fact that such work falls squarely within its jurisdiction[.]" (Compl. ¶ 27.) On January 13, 2010, the Union demanded arbitration. (Id. at ¶ 28.) The Union defined the grievance issue as: "The Employer has violated, and is continuing to violate, the collective bargaining agreement by causing the assignment of bargaining unit work to non-bargaining unit personnel." (Compl. Ex. D, p. 4.) The Union's Grievance was referred to the Arbitrator, and hearings were held on June 14, 2010, September 17, 2010, November 24,

3

2010, and December 2, 2010. (Compl. ¶ 30.) At the hearings, the Union raised a number of alleged violations of the Union's work jurisdiction relating to upholstery work, tent work, door repair work, surveying, furniture moving, signs, slot machines, roulette wheels, and other miscellaneous work, as well as with subcontracting maintenance work. (Id. at ¶ 31.) The time frame for the issues raised spanned from 2006-2010. (Id.) On March 6, 2011, the Arbitrator issued his Award. (Id. at ¶ 33.) After reviewing the "evidence and arguments presented by the parties" the Arbitrator deemed that the issue to be decided was: (1) "Did the Employer violate the Agreement by giving bargaining unit work to non-bargaining unit contractors and employees;" and (2) "If so, what shall the remedy be?" (Compl. Ex. E, p. 5.) The Arbitrator determined that the Company had indeed violated the Agreement on numerous occasions by improperly assigning or subcontracting work within the Union's jurisdiction to non-bargaining unit laborers or subcontractors. (Id. at 18.) In regards to the remedy awarded, the Arbitrator stated verbatim:

> By way of remedy, the Employer shall:
>
> Pay Union wages at the then prevailing straight time journeyman rates for the hours of work lost by the bargaining unit due to the Employer's improper assignment or subcontracting of such work as has been found above and make all contributions to fringe benefits required for such hours under the Agreement.
>
> The number of hours lost for which the Employer is liable are 4,240 hours for furniture moving; 2,508 hours for lock changes; 96 hours for set and scenery set up and tear down; 1,450 hours for upholstery work; 5,180 hours for signage; 112 hours for carpeting; 5,200 hours for slow machine work; and 1,642 for door maintenance; and 3,696 hours for the subcontracting of bargaining unit work for unspecified maintenance services within the Union's work jurisdiction provided by subcontractors Bittenbender, TN Ward, Graebel and Hooke.
>
> Be liable for any additional hours of work within the jurisdiction of the bargaining unit, as determined in the above Decision that was performed by labor or subcontractors *yet to be determined* by the Union. To that end, the Employer shall comply with all reasonable requests by the Union until June 30, 2011 for

4

>     additional documents that can reasonably be expected to lead to the discovery of such work.
>
>     Cease and desist from further assigning or subcontracting of bargaining unit work to non-bargaining unit labor.
>
>     Pay reasonable attorney fees and costs, including the cost of duplicating and compiling documents introduced during the arbitration, given the egregious nature of the Employer's violation of the Union's work jurisdiction.

(Id. at 18-19) (emphasis added). In addition to the foregoing, the Arbitrator included jurisdiction retention language, which states:

> The undersigned will retain jurisdiction over this matter for a period of one year to implement the within remedy and assist in the resolution of disputes over the implementation of the remedy.

(Id. at 19.)

On March 29, 2011, the Company filed a Complaint seeking to vacate the arbitration award and it also filed an Expedited Motion to Stay the enforcement of the Arbitrator's award until this Court could review the Arbitrator's decision. On April 28, 2011, the Union filed the instant Motion to Dismiss alleging that this Court lacks subject matter jurisdiction or because the Arbitrator's decision is not final. As the Union never responded to the Company's Motion for Stay, on May 6, 2011, we granted the same. On May 11, 2011, the Union filed a Motion for Reconsideration asking this Court to rescind our May 6, 2011 Order granting the Company's request for a stay. On May 25, 2011, the Company filed a "Motion for Default Judgment or in the Alternative [Its] Response to the Union's Motion to Dismiss." On June 24, 2011, we ordered the Union to respond to the Company's Motion for Default by June 27, 2011. The Union submitted its Response in Opposition to the Company's Motion for Default Judgment on June 24, 2011.

## II.     JURISDICTION

A district court has jurisdiction under section 301 of the Labor Management Relations Act ("LMRA") to vacate or enforce a labor arbitration award. Millmen Local 550 v. Wells Exterior Trim, 828 F.2d 1373 (9th Cir. 1987) (citing General Drivers Local Union No. 89 v. Riss & Co., 372 U.S. 517, 519 (1963); Kemner v. Dist. Council of Painting and Allied Trades No. 36, 768 F.2d 1115, 1118 (9th Cir. 1985)). See also Pittsburgh Metro Area Postal Workers Union, AFL-CIO, et al. v. United States Postal Service, No. 07-0078, 2008 WL 1775502, at *3 (W.D. Pa. Apr. 16, 2008) (citing United Transp. Union Local 1589 v. Suburban Transport Corp., 51 F.3d 376 (3d Cir. 1995)). Section 301 of the LMRA confers jurisdiction upon district courts for all "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C.A. § 185. A district court exercises this jurisdiction not only when it enforces an award resolving an issue the employer and the union have contracted to arbitrate, but also when it enters an order directing that the parties undertake an arbitration process that they have contracted to follow. Pittsburgh Metro Area Postal Workers Union, 2008 WL 1775502, at *3 (citing Union Switch & Signal Div. American Standard Inc. v. United Electrical, Radio & Machine Workers Local 610, 900 F.2d 608, 612 (3d Cir. 1990)). Furthermore, while a party relies on the "complete arbitration rule" (i.e., that the Arbitrator's award is final and binding), that rule does not divest this Court of jurisdiction over the instant matter. See Union Switch, 900 F.2d at 612. The complete arbitration rule "while a cardinal and salutary rule of judicial administration, it is not a limitation on a district court's jurisdiction." Id.

Therefore, we have jurisdiction over the Company's Complaint to vacate the Arbitrator's award and we opine that to the extent the Union seeks to dismiss the Complaint pursuant to Rule

12(b)(1), said Motion is denied.

## III. STANDARDS OF REVIEW

### A. Default Judgment

As a preliminary matter, we will first address whether we will grant the Company's Motion for Default Judgment, which it submitted in the alternative along with its Response in Opposition to the Union's Motion to Dismiss. Federal Rule of Civil Procedure 55 governs the procedure for entries of default and default judgment. Rule 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Either the clerk or the court may enter a default judgment. Fed. R. Civ. P. 55(b). In this case, the Company has requested that we enter a default judgment against the Union, which the Federal Rules permit pursuant to Rule 55(b)(2). Rule 55(b)(2) provides that, in cases where damages cannot be made by computation, the party must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). The Third Circuit recognizes that entry of default by the clerk under Rule 55(a) constitutes a general prerequisite for a subsequent default judgment under Rule 55(b). Husain v. Casino Control Com'n, 265 Fed. Appx. 130, 133 (3d Cir. 2008) (citing 10A Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure, § 2682 (2007)). Furthermore, in deciding whether to grant a default judgment, a court may consider whether: (1) a denial would prejudice the plaintiff; (2) the defendant appeared to have a litigable defense; and (3) the defendant's delay was caused by culpable conduct. Id. (citing Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000)).

In the instant matter, a review of the docket reveals that the clerk never entered an entry

7

of default or that the Company ever moved for such an entry. Thus, we find that the Company's Motion for Default Judgment is procedurally improper. We also note that the Company has not alleged that it would suffer any degree of prejudice by denying the Union's Motion. Accordingly, we will deny the Company's Motion for Default Judgment.

  **B.**  **Motion to Dismiss**

When considering a Rule 12(b)(6) motion, we are required to accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 350-51 (3d Cir. 2005) (citing Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)). A Rule 12(b)(6) motion should be granted if it appears to a certainty that no relief could be granted under any set of facts which could be proved. Id. at 351 (citing D.P. Enter, Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984)). However, we need not credit "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. Id. (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

**IV.**  **DISCUSSION**

  **A.**  **Complete Arbitration Rule**

An arbitration award that postpones the judgment of a remedy should not constitute a "final and binding award" reviewable under section 301. Union Switch & Signal, 900 F.2d at 611 (citing Millmen Local 550, 828 F.2d at 1375, 1377). Generally, an arbitrator's decision is considered final when the arbitrator has completed his determination of every issue submitted by the parties. Millmen Local 550, 828 F.2d at 1376 (quoting Anderson v. Norfolk & Western R. Co., 773 F.2d 880, 883 (7th Cir. 1985)). The Third Circuit has held that, although the complete

arbitration rule is prudential and not jurisdictional, at this stage in the proceedings, the distinction is of little value. Union Switch & Signal, 900 F.2d at 611-12. The purpose of this rule is to avoid "fragmented litigation." Id. at 611. The complete arbitration rule does not, however, mean that the mere possibility that an arbitrator may need to take further action renders an award non-final. Dreis & Krump Manufacturing Co. v. Int'l Ass'n of Machinist and Aerospace Workers, 802 F.2d 247, 250 (7th Cir. 1896). Additionally, where all that remains in terms of the remedy is a computation of the amount of damages, such outstanding issues are typically described as "ministerial" and, likewise, does not render the award non-final. Trustees of the Univ. of PA v. Teamsters Union Local 115, Philadelphia, No. Civ.A. 03-4968, 2004 WL 1275567, at *2 (E.D. Pa. June 10, 2004) (citing Dreis & Krump Manufacturing Co., 802 F.2d at 251).

This case is analogous to Union Switch & Signal. In Union Switch & Signal, the arbitrator issued an award that was final in regards to the issue of liability. 900 F.2d at 609. However, concerning the issue of what remedy should follow, the arbitrator stated, "Adversely affected employees are to be retroactively reinstated, at least for such period as they otherwise were entitled to continued employment consistent with this decision, and are to be made whole." Id. at 609. Furthermore, the arbitrator retained his jurisdiction by stating, "I retain my jurisdiction to make final rulings on any remedial disputes that the parties are unable to resolve after full discussion." Id. After the arbitrator issued his decision, the employer filed a complaint in district court, seeking to have the arbitrator's award vacated and the union counterclaimed for enforcement of the award. Id. The district court referred the case to a magistrate judge for pretrial proceedings, and, following cross-motions for summary judgment, the magistrate filed a report and recommendation that summary judgment should be granted in favor of the union. Id.

9

The company did not file any objections to the magistrate's report, and the district court, by memorandum order, adopted the magistrate's report as the opinion of the court. Id. at 609-10. No appeal from that order was taken. Id. at 610. The Court of Appeals expressed unequivocal disapproval of the district court's exercise of jurisdiction over the original complaint and counterclaim. Id. It opined:

> There can be no doubt that the district court committed serious error when it entertained the original cross-applications to vacate or enforce, error that would have required reversal of the court's judgment had there been an appeal. In entertaining the original action, the district court acted contrary to the consistent teachings of this court and, so far as we are aware, every other Court of Appeals that has considered a similar issue.

Id.

In the Third Circuit's view, the district court should have followed the holdings of Public Service Electric & Gas Co. v. System Council U-2, 703 F.2d 68 (3d Cir. 1983) and Millmen Local 550. Id. at 610-11. In System Council U-2, an arbitration panel had determined that the employer violated the collective bargaining agreement, but "instructed the parties to schedule a hearing on remedies when and if they determined such a hearing was necessary." 703 F.2d at 69. Instead of proceeding with the arbitration, the employer went to district court and obtained an order vacating the award. Id. On appeal, the court held that the district court should not have entertained a lawsuit until the arbitration was completed. Id. Thus, the court reversed the district court's order with directions to dismiss the company's petition. Id. In Millmen Local 550, the arbitrator found the employer liable for violating the collective bargaining agreement but left the parties to decide the question of remedies. 828 F.2d at 1374-75. The arbitrator also retained jurisdiction in the event that the parties could not agree upon such a remedy. Id. When the union

10

petitioned the district court to confirm the arbitrator, the employer moved to dismiss for "lack of final award." Id. at 1375. The district court confirmed the award, but on appeal the Ninth Circuit, relying in part on System Council U-2, held that judicial review of incomplete arbitration awards is inappropriate in all but the "most extreme" situations. Id. at 1375, 1377. Accordingly, the court also reversed and remanded with directions to dismiss. Id. at 1377.

Likewise here, the Arbitrator has not issued a final award because he has left open the question of remedies. In pertinent part, his award states that the Company shall "[b]e liable for any additional hours of work within the jurisdiction of the bargaining unit, as determined in the above Decision that was performed by labor or subcontractors *yet to be determined* by the Union." (Compl., Ex. E at 19) (emphasis added). Furthermore, the Arbitrator ordered the Company to comply with all reasonable document requests to assist the Union in discovering those additional hours. (Id.) Therefore, what is required of the parties to comply with the Arbitrator's award goes beyond a mere ministerial act such as mathematical calculations. To the contrary, the parties must engage in additional discovery. In anticipation of disputes likely to arise out of the additional discovery ordered and the resolution of the remedy, the Arbitrator retained jurisdiction to "implement the within remedy and assist in the resolution of disputes over the implementation of the remedy." (Id.) Thus, in all pertinent aspects, the Arbitrator's award is analogous to those in the above cases. We will, therefore, follow this case law and find here that the award is not final.

The Company argues that the complete arbitration rule is inapposite here, because policies behind the complete arbitration rule do not apply in this case. (Company's Response at 4.) We disagree. The two policy considerations to which the Company refers are grounded in

11

the Court of Appeals decision in Union Switch & Signal. They are: (1) to avoid "piecemeal" or "fragmented" litigation, and (2) to allow the parties to attempt to work out their remaining differences after a partial resolution. Union Switch & Signal, 900 F.2d at 611. We note that the second policy consideration offered by the Company stems from the court's discussion of a commonly utilized arbitration practice. Specifically, the Third Circuit used that language to explain why arbitrators frequently issue awards that defer determination of the remedy. Id. It explained that the practice is tantamount to calling a "'time out' during an arbitration in the hope that a partial resolution will inspire the parties to work out their remaining differences on their own, thereby avoiding the time and expense of additional arbitration." Id. However, the Court of Appeals cautioned:

> . . . we must take care to ensure that the parties do not use these 'time outs' as an opportunity to rush to court, either to preserve what they have just won, or (more often) to forestall a process that is not turning out as they might have wished.

Id.

The Company contends that a lawsuit will not result in fragmented litigation because the awarded damages are easily accessible and require no more than simple calculations. (Company's Response at 5.) The Company further contends that, to the extent that there may be piece meal litigation, such is the natural consequence of the Arbitrator's "unlawful award." (Id. at 6.) According to the Company, the award is unlawful because the Arbitrator exceeded his authority by awarding financial remedies beyond the time-frame permitted by the GBCA and by finding the Company liable for violations "yet to be determined by the Union." (Id.) The Company maintains that it will not pay the damages absent a court order and that remand would, thus, be futile. (Id.) If the award is not lawful, then the award is complete and there are no

12

remaining unresolved issues to be determined. However, if the award is lawful, the complete arbitration rule dictates that we dismiss this case. Thus, we must now consider whether the portion of the award that renders the arbitration incomplete is lawful.

B.     Scope of the Arbitrator's Authority

Courts play only a limited role when asked to review the decision of an arbitrator. United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987). "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract." Id. The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements, because the federal policy of settling labor disputes by arbitration would be undermined if the courts had the final say on the merits of the awards. Id. (citing Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960)). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement' and is not merely 'his own brand of industrial justice,' the award is legitimate. Id. (citing 363 U.S. at 597). Arbitral decisions are insulated from judicial review, in part, because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, and so it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Id. at 37. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. Id. at 37-38.

To resolve disputes about the application of a collective bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. Id. at 38. The same is true of the arbitrator's interpretation of the contract. Id. The

arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. Id. (citing 363 U.S. at 599). So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect. Id. As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced that he committed serious error does not suffice to overturn his decision. Id. Of course, decisions procured through the parties through fraud or through the arbitrator's dishonesty need not be enforced. Id. Moreover, decisions may be overturned if the decision is entirely unsupported by the record, reflects a manifest disregard of the contract, or if the award contravenes well-defined public policy. See Exxon Shipping Co. v. Exxon Seamens' Union, 73 F.3d 1287, 1291 (3d Cir. 1996).

Additionally, "[u]nder the Federal Arbitration Act, a district court may vacate an arbitration award if, *inter alia*, 'the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" Matteson et al. v. Ryder System Inc. et al., 99 F.3d 108, 112 (3d Cir. 1996) (citing 9 U.S.C. §10(a)(4)). In other words, an arbitrator may not venture beyond the bounds of his or her authority. Id. (citing United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597-98 (1960)). The authority of the arbitrator is defined not simply by the collective bargaining agreement, but it is determined in large measure by the parties' submissions. Id. (citing Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 62 (3d Cir. 1986)). In such cases then, it follows that the arbitrator has the authority to decide only the issues actually submitted. Id. at

112-13 (citing United Parcel Serv., Inc. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 430, 55 F.3d 138, 142 (3d Cir. 1995); United Steelworkers, 363 U.S. at 598). It is the responsibility of the arbitrator in the first instance to interpret the scope of the parties' submission, but it is within the court's province to review an arbitrator's interpretation. Id. at 113 (citing Mobile Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 302 (3d Cir. 1982)). When reviewing the arbitrator's interpretation of the issues submitted, the standard of review is as deferential as the standard of review used to evaluate the arbitrator's decision. Id. However, a court is not entitled or encouraged to simply "rubber stamp" the interpretations and decisions of arbitrators. Id. (citing Leed Architectural Prods., Inc. v. United Steelworkers of America, Local 6674, 916 F.2d 63, 65 (2d Cir. 1990)). Courts still maintain a significant role in the labor arbitration process; they have not been relegated to the status of merely offering post-hoc sanction for the actions of arbitrators. Id.

        1.     Scope of Financial Remedy

The Company argues that the Arbitrator exceeded his authority by awarding financial remedies pre-dating the filing of the arbitration. (Company's Response at 6.) In support of its argument, the Company refers to Article 14 of the GBCA, which the Company claims limits financial remedies to those that accrued from the date when the Union filed the arbitration in January of 2010. (Id.) In essence, the Company disagrees with the Arbitrator's interpretation of Article 14 of the GBCA. Moreover, the Company argues that there is "no reasonable position" that the financial remedy is not unlawful or outside the arbitrator's authority. (Id.) We disagree.

Turning first to the topic of contract interpretation, we find that the Arbitrator was

arguably construing or applying the contract when he awarded remedies pre-dating the filing of the arbitration. Thus the award "drew its essence from the collective bargaining agreement." Article 14 of the GBCA states, in pertinent part:

> . . . should the Arbitrator direct a financial remedy, such remedy shall commence to run from the date the arbitration is filed and shall bear an interest rate from that date to the date of payment equal to six percent per year, compounded monthly from the date the Arbitration is filed to the date that payment is made

(Compl. Ex. A, Art. 14, p. 23.) Additionally, the 2006 MOU incorporates the above provision and was effective as of November 2006. (Compl. Ex. B, p.1.) Though the Arbitrator did not explain which provisions of the Agreements he was referencing in awarding damages pre-dating the filing of the arbitration, his award is logical if he interpreted Article 14 to mean that the financial remedy, when awarded, shall be deemed *final* for the purposes of computing interest on the date the arbitration is filed. The Company's proposed interpretation is extremely limiting and would preclude financial recovery altogether in all but the narrowest of circumstances. The Arbitrator permissibly construed the language against such a result, as he was authorized to do, and we will not disturb his decision. To the extent that the Company disagrees with the Arbitrator's interpretation of Article 14, such interpretation is precisely what it bargained for.

We also find that the award is clearly encompassed by the GBCA and the Parties' submissions. The GBCA provides for a dispute resolution process, which culminates in arbitration for "all disputes of any nature whatsoever which may arise between the parties hereto or their individual members." Additionally, the broad grievance presented to the Company by the Union, covered violations of the collective bargaining agreement for assigning bargaining unit work to non-bargaining unit personnel and "make whole" remedies. (Compl. Ex. D, p. 4.)

16

Lastly, the arbitrator interpreted the issues to be determined as: 1) "Did the Employer violate the Agreement by giving bargaining unit work to non-bargaining unit contractors and employees;" and (2) "If so, what shall the remedy be?" Thus, we find that the Arbitrator did not exceed his authority in his award of financial remedies.

> 2. Liability for Violations "Yet to be Determined"

The Company argues that the Arbitrator's finding of liability for violations "yet to be determined by the Union" is plainly unenforceable, and does not diminish the finality of the remainder of his Order. (Company's Reply at 6, n. 2.) The disputed portion of his award states:

> By way of remedy, the Employer shall***
>
> Be liable for any additional hours of work within the jurisdiction of the bargaining unit, as determined in the above Decision that was performed by labor or subcontractors *yet to be determined* by the Union. To that end, the Employer shall comply with all reasonable requests by the Union until June 30, 2011 for additional documents that can reasonably be expected to lead to the discovery of such work.

(Compl., Ex. E at 19) (emphasis added). The Company contends that this portion of the decision exceeds the Arbitrator's authority because it is "necessarily based on conduct that was not complained of by the Union, not the subject of a proper grievance, and thus plainly not before the arbitrator in the first place." (Company's Reply at 6, n. 2.)

First, we disagree with the Company's characterization of this part of the award as "damages based on *conduct* yet to be determined." (Id, at 6.) The conduct in question is the improper assignment of work to non-bargaining unit members, which was the precise topic of arbitration. Furthermore, the Arbitrator expressly limited this portion of the award to "additional hours of work within the jurisdiction of the bargaining unit, as determined in the above

17

decision." (Compl., Ex. E at 19). In our view, this limitation clarifies any dispute over whether this constitutes a new grievance. Put simply, the conduct has already been determined and arbitrated, all that remains to be determined is the extent of the hours improperly assigned.

Additionally, we find that the arbitrator did not "venture beyond the bounds of his authority" in determining that the Company's liability extended to additional hours of work which the Company improperly assigned to non-bargaining unit members. The GBCA contemplated arbitration for "all disputes of any nature whatsoever," and the Union's grievance and demand for arbitration conveyed that the issue to be arbitrated was the improper assignment of work to non-bargaining unit members and appropriate remedies. The Arbitrator's interpretation of the issues to be determined was entirely consistent with the submissions. Therefore, the additional time given to the Union to uncover the full extent of the damages caused by the Company's violations, was a proper exercise of the Arbitrator's authority.

### C. The Union's Alleged Failure to Follow the Grievance Procedure

Lastly, the Company contends that there are issues of "substantive arbitrability" regarding the Union's claims, that only this court has the authority to decide. (Company's Response at 6-7.) It argues that the Union failed to follow the grievance procedures provided in the GBCA and, accordingly, that it never agreed to arbitrate the dispute. (Id. at 7.) It further argues that this violates a well-established principle of jurisprudence that complaints which are not the subject of a proper grievance are not substantively arbitrable. (Id. at 7.)

Although the Company describes the arbitrability issue as "substantive," there can be no doubt that its objection arises out of alleged procedural deficiencies because the Company complains that the Union did not follow the required steps provided for in the Agreement before

demanding arbitration.  See John Wiley & Sons v. Livingston, 376 U.S. 543, 554-59 (1964).  In John Wiley & Sons, the plaintiff claimed that it was relieved of its duty to arbitrate because the Union had not attempted to resolve its issues with the plaintiff in the manner provided for in the parties' agreement.  Id. at 555-56.  The Company further alleged that the question of whether 'procedural' conditions to arbitration must be decided by the court and not the arbitrator.  Id. at 556.  The Supreme Court flatly rejected the Company's arguments and held that claims of non-arbitrability based upon procedural deficiencies in submitting the case to the arbitrator are solely for arbitral consideration.  Id. at 557.  Here, the Company raised its procedural claims during the arbitration and the Arbitrator found that the Union's default did not preclude it from arbitrating its grievance.  (Mot. to Dismiss, Ex. 2 at 16-17.)  Thus, pursuant to clear instruction from the Supreme Court, we will not disturb the arbitrator's decision on procedural arbitrability grounds.

       An appropriate Order follows.